IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CRAIG L. FOSTER,

    Plaintiff,

v.                                                            Civ. No. 14-970 SCY/WPL

GALLUP POLICE DEPARTMENT,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant Gallup Police Department's Motion to Dismiss (*Doc. 2*) Plaintiff's civil rights complaint. Defendant argues that Plaintiff's claims under the Americans with Disabilities Act, Rehabilitation Act, and New Mexico Human Rights Act all fail as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the Motion (*Doc. 15*). Having reviewed the Motion, Response, and Reply (*Doc. 17*), and otherwise being fully advised, the Court has decided to **GRANT** the Motion in part and **DENY** the Motion in part as further described below.

**I.    FACTUAL BACKGROUND**

On September 26, 2014, pro se Plaintiff Craig Foster filed a one-page complaint alleging that Defendant Gallup Police Department mistreated him because of his psychiatric disability: schizophrenia. *Doc. 1*, Ex A. Plaintiff specifically accused the Police Department of having harassed him and threatened violence against him, on numerous occasions, even though he was "doing nothing wrong and posed no threat." *Id.* at 2. For example, Plaintiff maintains that, in August or September of 2013, members of the Gallup Police Department followed, arrested, and detained him, "treating [him] more harshly than they would other people because of [his]

1

disability." *Id.* According to Plaintiff, he attempted to informally resolve his problems with Defendant by writing a letter to the Chief of Police and asking for a meeting, but these efforts were rebuffed. *Id.* Specifically, Plaintiff states that he was told to leave the police department or be arrested for trespassing when he tried to speak with the Chief of Police. *Id.*

While Plaintiff's complaint does not provide much detail regarding the nature of the alleged harassment and does not specifically describe what has prompted these un-enumerated interactions with the police, Plaintiff does explain that his schizophrenia causes him to hear voices and that he had been advised by his treating physician to respond to these voices out loud. Plaintiff claims that he informs police of these facts whenever they question or badger him. *Id.*

Moreover, Plaintiff's Response to Defendant's Motion to Dismiss contains a list of examples of instances where the Police allegedly harassed him: (1) the police refused to let him use the restroom at the police station and then followed him across the street and arrested him for urinating in the bushes; (2) the police approached him, near Rio West Mall, and ordered him to leave, while he was sitting in his car, filling out a job application, and waiting for a friend who was shopping; (3) the police stormed inside Eagle Cafe, where plaintiff was eating breakfast, and pointed a "fully automatic weapon . . at [his] head;" (4) on two different occasions, the police detained him at the library; and (5) the police refused to respond to his requests that they help him mediate a dispute he was having with a representative at Rico's GM. *Doc. 15* at 3-5. Plaintiff specifies that this "pattern of abuse" occurred between August 15, 2013 and December 28, 2013. *Id.* at 2. Furthermore, Plaintiff reiterates that he believes the Police Department has been "purposefully harassing, intimating, and threatening [him] so that [he] would move away." *Id.* at 6.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Supreme Court has articulated a two-step approach for district courts to use when considering a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court must identify the adequately pleaded factual allegations contained in the complaint, disregarding any unsupported legal conclusions in the process. *Id.* at 678. While a complaint need not include detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Next, having identified the adequately pleaded facts, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Stated concisely, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.

A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Significantly, the key question is not whether the plaintiff is likely to be able to prove his allegations. Rather, a motion to dismiss tests the legal sufficiency of a plaintiff's claims. If these claims are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] ha[s] not nudged [his] claims across the line from conceivable to plausible." *Id.*

In making this determination, however, the Court must be careful to view the complaint

3

in the light most favorable to the plaintiff. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013). Moreover, when, as is the case here, the plaintiff is pro se, the court will construe the plaintiff's filings liberally, making allowances for the confusion of various legal theories, poor writing, or unfamiliarity with pleading requirements. *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### III. ANALYSIS

In the complaint, Plaintiff explicitly invokes the protections of the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act, the New Mexico Human Rights Act (the "NMHRA"), and the federal constitution as it is enforced through 42 U.S.C. § 1983. *Doc. 1*, Ex. A. In asking the Court to dismiss Plaintiff's complaint (*Doc. 3 at 8*), however, Defendant, at this time, has only moved to dismiss Plaintiff's statutory claims – the ADA, Rehabilitation Act, and NMHRA claims. Defendant does not address Plaintiff's § 1983 claims and it appears that Defendant does not read Plaintiff's complaint as asserting constitutional claims. Because Plaintiff is pro se, the Court rejects this interpretation of the complaint. Construed liberally, Plaintiff's complaint alleges a Fourth Amendment unlawful seizure and/or excessive force claim under § 1983.[1] Because Defendant has not moved to dismiss this claim, the Court will allow it to proceed.

#### A. ADA claim

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

---

[1] *See Doc. 1*, Ex. A at 2 ("[T]he Gallup Police Department has . . . threatened violence against me, when I was doing nothing wrong and posed no threat . . . On one occasion in August or September of 2013, the Gallup Police Department followed, arrested, and detained me unnecessarily. . . The Gallup Police Department's past and ongoing mistreatment of me is a violation of my civil and constitutional rights, prohibited by 42 U.S.C. § 1983").

42 U.S.C. § 12132. In 1999, the Tenth Circuit discussed how this prohibition applied to police encounters with mentally ill, or otherwise disabled, individuals. *See Gohier v. Enright*, 186 F.3d 1216 (10th Cir. 1999). *Gohier* involved allegations that a police officer violated the ADA by shooting a man with paranoid schizophrenia to death when this man continued to approach the officer in a threatening manner after the officer repeatedly told him to stop. *Id.* at 1217-18. The district court dismissed the plaintiff's claim, reasoning that police protection is not a service, program or activity as defined by the ADA , so the ADA does not govern police conduct during an arrest or investigation. *Id.* at 1220. The Tenth Circuit rejected this analysis. First, it noted that Title II of the ADA contains two prohibitions: (1) a specific command that public entities not exclude disabled persons from enjoying the benefits of public services, programs, and activities, and (2) a catch-all clause that public entities not subject disabled persons to any other form of discrimination. *Id.* at 1219-20. The Court then stated that "a broad rule categorically excluding arrests[2] from the scope of Title II . . . is not the law." *Id.* at 1221.

Prior to making this determination, the Court discussed two different types of ADA arrest claims that had been recognized by federal courts: (1) claims that the police wrongfully arrested the plaintiff due to a misperception that the effects of the plaintiff's disability (*e.g.* slurred speech) were indicative of criminal activity and (2) claims that the police failed to make reasonable accommodations for a disabled individual during the course of a lawful arrest or investigation. *Id.* at 1220-21. In an exercise of judicial caution, the Tenth Circuit declined to adopt either "theory" and instead affirmed the dismissal of the plaintiff's claims on the basis that the officer's conduct was warranted by the deceased individual's threatening and unlawful conduct. *Id.* at 1221. Thus, whether a plaintiff may state a claim under one of the above theories

---

[2] The Court explained that it was using the term arrests broadly to cover a variety of police-citizen interactions, including arrests, investigations, and violent confrontations. *Id.* at 1220.

remains something of an "open question" in this circuit. *Id.*

*Gohier's* survey of ADA arrest claims and its acknowledgment that that ADA places restrictions on police conduct, however, suggests that the Tenth Circuit would adopt some version of the wrongful arrest and reasonable accommodation theories. *See Monarque v. City of Rio Rancho*, No. 1:11-cv-00135-MV-KBM, 2012 U.S. Dist. LEXIS 177622, at *33 (D.N.M. Jan. 23, 2012) (unpublished) ("Other courts of this Circuit have read the court's survey of out-of-circuit case law in *Gohier* to predict that the Tenth Circuit would likewise recognize a failure-to-reasonably-accommodate theory during an arrest."). Defendant does not contest this point and instead argues that Plaintiff has not alleged an ADA violation under either theory. Thus, for the purposes of this motion, the Court will assume that these theories are viable and will address whether Defendant is correct that Plaintiff has not alleged an ADA violation under either theory.

Plaintiff claims that the Gallup Police Department has repeatedly harassed, threatened, and detained him even though he was behaving lawfully and not posing any threat to the public. These claims clearly fit within the rubric of a wrongful arrest theory, not a failure-to-accommodate during a lawful arrest theory. As Defendant emphasizes, however, the factual allegations supporting Plaintiff's claims are sparse. Aside from his summary assertions of harassment, Plaintiff identifies only one specific instance of misconduct in the complaint: an August or September 2013 encounter when he was followed and arrested for no good reason. Plaintiff does not state where this occurred or give any other specific details regarding the interaction. In light of these deficiencies, the Court agrees that Plaintiff's complaint lacks sufficient factual material to withstand a motion to dismiss. *See McDonald v. Wise*, 769 F.3d 1202, 1218-1219 (10th Cir. 2014) ("To withstand a Rule 12(b)(6) motion, a complaint requires more than labels and conclusions because a formulaic recitation of the elements of a cause of

6

action will not do.").

Plaintiff's Response, on the other hand, contains much more detail regarding the alleged instances of police harassment. Plaintiff identifies several discrete police encounters, by location, and explains how the police detained, hassled, or threatened him (once by pointing a gun at him head), even though he was acting peaceably. Viewed in the light most favorable to Plaintiff and considered along with the allegations in the complaint, these additional representations, if true, push Plaintiff's claims across the line from conceivable to plausible. Plaintiff specifically alleges that the Gallup Police Department's treatment of him has been worse than their treatment of non-disabled individuals and that he has informed them of his disability, but they have continued to purposefully harass him. From these facts, the Court can reasonably infer that the Gallup Police Department has wrongfully arrested (or detained) Plaintiff "because they misperceived the effects of [Plaintiff's] disability [talking to himself out loud] as criminal activity." *See Gohier*, 186 F.3d at 1220.

Alternatively, Plaintiff's representations also state a viable ADA wrongful arrest claim under a theory that the Tenth Circuit did not explicitly considered in *Gohier*: a theory of blatant discrimination. The plain language of the ADA prohibits the Gallup Police Department from intentionally discriminating against disabled individuals. 42 U.S.C. § 12132; *see also Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 858 (10th Cir. 2003) (in enacting the ADA, "Congress prohibited a broad, comprehensive concept of discrimination," including, of course, "discrimination motivated by a hostile discriminatory purpose"). Here, Plaintiff claims that the Gallup Police Department targeted him for harassment in an effort to force him, one of the few paranoid schizophrenics in the area, out of the community. If true, this is a violation of Title II of the ADA.

For all of these reasons, the Court declines to dismiss Plaintiff's complaint, but will instead allow Plaintiff an opportunity to amend the complaint to add the allegations contained in Plaintiff's Response, which are necessary to support Plaintiff's ADA claim. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (before dismissing a claim under Fed. R. Civ. P. 12(b)(6), a court should consider whether leave to amend would be futile). In amending the complaint, Plaintiff should include the names of the officers with whom he interacted, if he knows their names, as well as the dates of the various encounters, to the best of his memory. The purpose of including these details is to provide Defendant with as much notice of the claims asserted by Plaintiff as is reasonably possible.

### B. Rehabilitation Act Claim

The Rehabilitation Act prohibits discrimination on the basis of disability in federal programs and programs receiving federal funding. 29 U.S.C. § 794(a). "To establish a prima facie claim under [the Rehabilitation Act], a plaintiff must demonstrate that (1) plaintiff is handicapped under the Act; (2) []he is otherwise qualified to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Barber v. Colorado*, 562 F.3d 1222, 1228 (10th Cir. 2009). Defendant correctly points out that Plaintiff's Rehabilitation Act claim is legally deficient because it fails to allege that the Gallup Police Department, the program presumably at issue, received federal financial assistance. *Doc. 3* at 6. Plaintiff has not responded to this argument. The Court will, therefore, dismiss Plaintiff's Rehabilitation Act claim.

### C. NMHRA Claim

The NMHRA forbids "any person in any public accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services, facilities, accommodations or

goods to any person because of . . . physical or mental handicap." NMSA § 28-1-7(F). Public accommodation is defined broadly in the Act as "any establishment that provides or offers its services, facilities, accommodations or goods to the public." NMSA § 28-1-2(H); *see also Elane Photography, LLC v. Willock*, 2012-NMCA-086, ¶ 14 (calling the language of the NMHRA expansive and noting that "[c]ases addressing public accommodations statutes with similarly broad language support a national trend that has expanded the traditional definition of business activity that constitutes a 'public accommodation.'"). Despite this language, Defendant contends that a police department and police services cannot be deemed a public accommodation under the Act. *Doc. 3* at 7-8. This is a thorny question as there is no directly applicable New Mexico case law and very little New Mexico case law discussing the scope of the public accommodation definition. *Elane Photography*, 2012-NMCA-086, ¶ 10 (as of 2012 there was only one New Mexico case addressing what constitutes a public accommodation: *Human Rights Comm'n v. Bd. of Regents*, 1981-NMSC-026, 95 N.M. 576). Courts in states with similar statutes have come to opposite conclusions on this issue. *Compare Seabourn v. Coronado Area Council*, 257 Kan. 178, 200 (Kan. 1995) (a police function is not a public accommodation) *with Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 345 (App. Div. 2004) (police department is a public accommodation).

Fortunately, the Court need not resolve this weighty issue of New Mexico law. Before filing a lawsuit under the NMHRA, a plaintiff must file a grievance with the New Mexico Human Rights Commission as outlined in NMSA § 28-1-10. *Jaramillo v. J.C. Penney Co.*, 1985-NMCA-002, ¶¶ 2-3, 102 N.M. 272; *Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380 ("[C]ompliance with the grievance procedure in the Human Rights Act is a prerequisite to suit in district court under the Act."). This requirement is jurisdictional. *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 20, 127 N.M. 282; *Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109,

¶ 13("[F]ailure to exhaust administrative remedies deprives a district court of subject matter jurisdiction."). Plaintiff has not alleged that he complied with this procedure. As a result, the Court will dismiss Plaintiff's NMHRA claim without prejudice. This will give the New Mexico Human Rights Commission an opportunity to consider Plaintiff's claim that police discrimination is actionable under the NMHRA.

**IT IS THEREFORE ORDERED THAT:**

1. Defendant Gallup Police Department's Motion to Dismiss (*Doc. 2*) is **GRANTED** in part and **DENIED** in part.

2. Plaintiff's Rehabilitation Act claim is dismissed with prejudice.

3. Plaintiff's NMHRA claim is dismissed without prejudice as Plaintiff has not exhausted his administrative remedies.

4. Plaintiff has until March 23, 2015 to amend his complaint to include the allegations in his response, which are necessary to support his ADA claim.

5. Plaintiff's § 1983 Fourth Amendment unlawful seizure claim will proceed to discovery.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE